1  Todd M. Schneider (SBN 158253)
   Carolyn H. Cottrell (SBN 166977)
2  W.H. "Hank" Willson, IV (SBN 233321)
   SCHNEIDER WALLACE
3  COTTRELL BRAYTON
   KONECKY LLP
4  180 Montgomery Street, Suite 2000
   San Francisco, California 94104
5  Tel: (415) 421-7100
   Fax: (415) 421-7105
6  TTY: (415) 421-1665

Joseph E. Tilson (*admitted pro hac vice*)
Jeremy J. Glenn (*admitted pro hac vice*)
Jacob M. Rubinstein (*admitted pro hac vice*)
MECKLER BULGER TILSON MARICK
& PEARSON LLP
123 North Wacker Drive, Suite 1800
Chicago, Illinois 60606
Tel: (312) 474-7900
Fax: (312) 474-7898

7  Shanon J. Carson (*admitted pro hac vice*)
   Russell Henkin (*admitted pro hac vice*)
8  BERGER & MONTAGUE, P.C.
   1622 Locust Street
9  Philadelphia, Pennsylvania 19103
   Tel: (215) 875-4656
10 Fax: (215) 875-4604

Ronald H. Barsamian (SBN 81531)
BARSAMIAN & MOODY
1141 W. Shaw Ave, Ste. 104
Fresno, California 93711
Tel: (559) 248-2360
Fax: (559) 248-2370

11 Philip A. Downey (*admitted pro hac vice*)
   P.O. Box 736
12 Unionville, Pennsylvania 19375
   Tel: (610) 324-2848
13 Fax: (610) 347-1073

Counsel for Defendants

14 Attorneys for Plaintiffs and the proposed class

15               UNITED STATES DISTRICT COURT
16               EASTERN DISTRICT OF CALIFORNIA

17 SANTOS SALCIDO and GUADALUPE
   ALVAREZ; and CHRISTINA BARBOSA,
18
   on behalf of themselves and all others
19 similarly situated,

20               Plaintiffs,

21        vs.

22 CARGILL MEAT SOLUTIONS CORP.,
   CARGILL MEAT SOLUTIONS CORP.
23 d/b/a BEEF PACKERS, INC., and BEEF
   PACKERS, INC.,
24
               Defendants.
25

26        .

27

28

CASE NOS. 1:07-CV-01347-LJO-GSA AND
1:08-CV-00605-LJO-GSA

**CLASS ACTION**

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF JOINT
MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION
SETTLEMENT**

The Hon. Lawrence J. O'Neill

1

2

# <u>TABLE OF CONTENTS</u>

3

I.    INTRODUCTION ................................................................................................ 1

4

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

5

III.  SUMMARY OF SETTLEMENT TERMS ............................................................ 7

6

IV.   LEGAL ARGUMENT ....................................................................................... 11

7

    A.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF
THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND

8

        SCHEDULE A FAIRNESS HEARING ................................................... 11

9

        1.   The Proposed Settlement Falls Well Within the Range of
Possible Approval ...................................................................... 13

10

        2.   The Proposed Settlement was the Product of Informed, Non-
Collusive Negotiations and Does Not Present Any Grounds to

11

            Doubt its Fairness ....................................................................... 15

12

        3.   The Proposed Notices to Settlement Class Members and
Method of Notification are Adequate .......................................... 18

13

    B.   PROVISIONAL CERTIFICATION OF THE SETTLEMENT
CLASS IS APPROPRIATE .................................................................. 21

14

    C.   Class Certification is Proper Under Rule 23(a) ....................................... 22

15

    D.   Class Certification Is Proper Under Rule 23(b)(3). .................................. 25

16

V.    THE PROPOSED SCHEDULING ORDER ...................................................... 25

17

VI.   CONCLUSION ................................................................................................. 26

18

19

20

21

22

23

24

25

26

27

28

1

## **TABLE OF AUTHORITIES**

2

### FEDERAL CASES

3   *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)..........................................22

4   *Churchill Village LLC v. General Electric*, 361 F.3d 566 (9th Cir. 2004) ................ 19, 21

5   *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)....................................12

    *Dukes v. Wal-Mart Stores, Inc.*, 474 F.3d 1011 (9th Cir. 2007) ................................22, 23

6   *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461 (E.D. Pa. 2000).......................21, 22, 23, 24

7   *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982)..........................................23

8   *Hanlon v. Chrysler Corp.*, 150 F.3d 1001 (9th Cir. 1998)..........................................passim

9   *In re Activision Securities Litigation*, 723 F. Supp. 1373 (N.D. Cal. 1989) ....................18

    *In re General Motors Corp.*, 55 F.3d 768 (3d Cir. 1995) ..................................................12

10  *In re Michael Milken & Assoc. Sec. Litig.*, 150 F.R.D. 57 (S.D.N.Y. 1993) ...................13

11  *In re Pacific Enterprises Security Litigation*, 47 F.3d 373 (9th Cir. 1995) .....................18

    *In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270 (S.D. Ohio
12      1997) ............................................................................................................................17

13  *In re Tableware Antitrust Litig.*, 484 F. Supp.2d 1078 (N.D. Cal. 2007) .................passim

    *In re Vitamins Antitrust Litig.*, 2001 WL 856292 (D.D.C. July 25, 2001) ......................16

14  *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ....................................17

15  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507 (9th Cir. 1978)...........................24

    *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal.
16      2004) ............................................................................................................................12

17  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) ........................18

    *Pigford v. Glickman*, 185 F.R.D. 82 (D.D.C. 1999)..........................................................12

18  *Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ..........................................13

19  *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir.
        1990) ............................................................................................................................18

20  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996) ....................................21

21  *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995)...............16, 17

22  *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ...........................................18

23

### FEDERAL STATUTES

24  28 U.S.C. § 1715 ...........................................................................................................10, 11

25  29 U.S.C. § 201 ................................................................................................................passim

    Fed.R.Civ.P. 23(b)(3) ............................................................................................................25

26  Fed.R.Civ.P. 23(h)..........................................................................................................18, 20

27

28

1

## I.   **INTRODUCTION**

2

3

Plaintiffs Santos Salcido, Guadalupe Alvarez and Christina Barbosa (collectively

4

the "Plaintiffs"), on behalf of themselves and others similarly situated, and Defendants

5

Cargill Meat Solutions Corp., Cargill Meat Solutions Corp. d/b/a Beef Packers, Inc., and

6

Beef Packers, Inc. (collectively the "Defendant" or "Cargill"), jointly  move for an order

7

pursuant to Rule 23(e) of the Federal Rules of Civil Procedure granting preliminary

8

approval to the settlement of this wage and hour class and collective action litigation (the

9

"Settlement") between the Plaintiffs, the proposed California State Claims Class and

10

FLSA Collective Class (together the "Settlement Classes") they represent, and the

11

12

Defendant.

13

Plaintiffs allege that Defendant violated the federal Fair Labor Standards Act

14

("FLSA"), California's Labor and Business and Professions Codes, and other state laws,

15

by requiring their hourly employees to work substantial amounts of time without

16

17

compensation ("off-the-clock") and by failing to provide employees with the meal and

18

rest periods that they are entitled to under California law.  Defendant denies liability.

19

The terms of the parties' Settlement are set forth in the attached Agreement

20

(Exhibit 1) that was negotiated after the parties engaged in extensive arms-length

21

22

mediation sessions before Michael Loeb, Esq., an experienced JAMS mediator.

23

Declaration of Todd M. Schneider in support of Joint Motion for Preliminary Approval

24

of Class Action Settlement ("Schneider Decl.") ¶ 6.  The Settlement includes a cash

25

26

payment of seven and a half million dollars ($7,500,000.00) (the "Gross Settlement

27

Amount"), plus any interest earned thereon, less any fees and expenses awarded by the

28

1
2
3
4
5

Court. In exchange, the Plaintiffs and the Settlement Classes will seek dismissal of all claims against Defendant and will provide Defendant with a release of the Settled Claims Under California Law and the Settled Claims Under The Fair Labor Standards Act as defined in the attached Agreement (Exhibit 1).

6
7
8
9
10
11
12
13
14

The parties and their counsel agree that the negotiated Settlement Agreement provides a fair and reasonable Settlement for Plaintiffs and the Settlement Classes with respect to their claims for allegedly unpaid wages, liquidated damages, interest, and other penalties arising from the Defendant's alleged improper wage and hour practices at issue in this case. Schneider Decl. ¶ 8. If finally approved by the Court, the Settlement would represent a superior and highly beneficial result for the plaintiffs and all putative class members. *Id.*

15
16
17
18
19
20
21
22
23
24
25
26

In discovery, and prior to mediation, Plaintiffs' counsel reviewed thousands of relevant documents produced by Defendant, as well as compensation and time-keeping-related records for employees in the proposed Settlement Classes. Schneider Decl. ¶ 4. In addition, prior to mediation, Plaintiffs' counsel conducted detailed interviews of dozens of Settlement Class members concerning their wage and hour claims. *Id*. ¶2. The terms of the Settlement Agreement are therefore based on a thorough evaluation of the evidence and the underlying case law. *Id.* ¶¶ 4-6. The Settlement offers the Settlement Classes significant advantages over continued prosecution of their case against Defendant: members of the Settlement Classes who participate in the Settlement will receive significant financial compensation and will avoid the risks inherent in continued

27
28

1   prosecution of this case in which the Defendant asserts various defenses to its liability.

2   *Id.* ¶ 8.

3

4   Accordingly, by their Motion, the parties now seek the Court's (1) preliminary

5   approval of the Settlement Agreement; (2) approval of Rust Consulting, Inc. as Claims

6   Administrator and preliminary approval of the costs of administration; (3) provisional

7   certification of the proposed Rule 23 California State Claims Class for settlement

8   purposes; (4) provisional certification of the FLSA Collective Class for settlement

9   purposes; (5) approval of Plaintiffs as the Class Representatives of the Settlement Classes;

10   (6) approval of Plaintiffs' counsel as Class Counsel for the Settlement Classes; (7)

11   approval of the mailing of the Notice and Claim Form submitted herewith; and (8)

12   approval of the schedule and procedure for the final approval process for this Settlement.

13

14   The Parties respectfully submit that this Motion should be granted because the

15   proposed Settlement falls well within the range of reasonableness and there are no

16   grounds to doubt its fairness.  The Settlement was negotiated by experienced counsel on

17   both sides, with oversight from an experienced mediator over the course of several months

18   and after appropriate investigation of the claims and defenses.  Schneider Decl. ¶¶ 6-7.  It

19   has the explicit support of all three named Plaintiffs and public policy favors settlement of

20   complex class actions.  *Id.* ¶ 9.  Accordingly, the Parties respectfully request that the

21

22   Court enter the proposed Order.

23

24   **II.   FACTUAL AND PROCEDURAL BACKGROUND**

25   On September 14, 2007, Plaintiffs Salcido and Alvarez filed a collective action

26   Complaint alleging violations under the Fair Labor Standards Act, 29 U.S.C. § 201, *et*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*seq.* ("FLSA")*,* in the United States District Court for the Eastern District of California against Defendant Cargill, and on behalf of themselves and other similarly situated current and former hourly production and support employees of Cargill's meat processing facilities in Fresno, California ("Fresno Plant").   Plaintiffs Salcido and Alvarez filed a First Amended Class Action Complaint on October 27, 2007, alleging violations of the California Labor Code and other state laws in addition to their FLSA claims.

Plaintiff Barbosa filed her class-action Complaint in the Superior Court of California for the County of Fresno on April 1, 2008 alleging violations of California's Labor Code and other state laws arising from Defendant's alleged failure to pay wages for all hours Plaintiff and the class of similarly-situated Cargill employees at the Fresno Plant actually worked; alleged failure to pay overtime; and alleged failure to provide required meal and rest periods to Plaintiff and similarly-situated workers.   Plaintiff Barbosa's Complaint was subsequently removed to this Court.

Plaintiffs Salcido, Alvarez and Barbosa (collectively, "Plaintiffs"), now seek to represent the Settlement Classes, comprised of:

>All current and former hourly production and support employees of Cargill Meat Solutions Corp., Cargill Meat Solutions Corp. d/b/a Beef Packers, Inc., and Beef Packers, Inc.'s meat-packing facility in Fresno, California between September 14, 2003 and the date of preliminary approval (the "California State Claims Class")

>and

>All current and former hourly production and support employees of Cargill Meat Solutions Corp., Cargill Meat Solutions Corp. d/b/a Beef Packers, Inc., and Beef Packers, Inc.'s meat-packing facility in Fresno, California between September 14, 2004 and the date of

preliminary approval (the "FLSA Collective Class").

Plaintiffs allege that Defendant failed to ensure that current and former employees in the Settlement Classes were paid appropriate minimum wages or overtime wages and were not provided with meal and rest periods as required by California state law. The alleged uncompensated time includes time employees spent preparing to begin their work day after they arrived at Defendant's Fresno plant, donning and doffing personal protective clothing and equipment, obtaining and sanitizing safety equipment and gear, obtaining tools, equipment and supplies necessary for the performance of their work, "working" steels and all other activities in connection with these job functions, and walking between work sites. In addition, Plaintiffs allege that current and former employees in the California State Claims Class were not provided with mandatory meal and rest breaks.

Plaintiffs therefore asserted causes of action, on behalf of themselves and the proposed California State Claims Class and FLSA Collective Class for violations of the FLSA, the California Labor Code and California's Unfair Business Practices Act, California Business and Professions Code §§ 17200, *et seq.* Plaintiffs seek payment of unpaid wages, civil penalties, liquidated damages, and attorneys' fees and costs. Defendant has asserted defenses to the claims alleged by Plaintiffs and expressly denies each of the claims asserted against it and any and all liability arising out of the conduct alleged by Plaintiffs in their respective Complaints.

Plaintiffs Salcido and Alvarez retained the law firms of Valdez & Valdez and Philip A. Downey, Esq. to pursue their legal claims against Defendant. Plaintiff

Christina Barbosa retained Berger & Montague, P.C. and Schneider Wallace Cottrell Brayton Konecky LLP to pursue her legal claims against Defendant. In litigating this case, and in reaching the settlement, Plaintiffs' Counsel ("Class Counsel") have cooperated and coordinated their efforts to further the best interests of the Settlement Classes and avoid duplication of effort and unnecessary expense. Schneider Decl. ¶ 3.

Class Counsel and counsel for Defendant have conducted extensive proceedings in this action, including a pre-Complaint factual investigation in both cases, and engaged in formal and informal discovery. *Id.* ¶¶ 4-5. The parties have exchanged disclosures pursuant to Fed. R. Civ. P. 26(a), and have exchanged relevant discovery in the form of documents, including company policies, compensation and time-keeping related records, and notes of extensive interviews by Class Counsel of Settlement Class members which have been thoroughly reviewed and/or discussed among all parties. *Id.* Both Class Counsel and counsel for Defendant have made a thorough study of the legal principles applicable to the claims asserted against Defendant. *Id.* ¶ 6.

On August 27, 2008 and again on September 2, 2008, the parties participated in full-day mediation sessions in San Francisco, California before Michael Loeb, Esq., an experienced JAMS mediator. *Id.* The parties continued their discussions after the conclusion of the second mediation session, and subsequently the parties reached a tentative class-wide settlement of this action, subject to the Court's approval. *Id.*

The parties have since spent considerable time drafting the Settlement Agreement (Exhibit 1) that ensures that Settlement Class members are: (1) provided with notice of the Settlement Agreement and its terms; and (2) will not lose their right to sue under the

FLSA even after receiving notice, unless they affirmatively opt-in to this Settlement. *Id.* ¶ 7.

## III.  SUMMARY OF SETTLEMENT TERMS

Under the terms of the Settlement Agreement, within twenty (20) days after Preliminary Approval of the Settlement by this Court, Defendant will deposit the Gross Settlement Amount, into an interest-bearing Qualified Settlement Fund established pursuant to the Internal Revenue Code and governing regulations thereunder. Agreement ¶ 27(a).

The Qualified Settlement Fund will be administered by a Court-appointed Claims Administrator, Rust Consulting, Inc., an independent and highly experienced third-party claims administration company.    Agreement ¶¶ 2(b), 27(b).   The Gross Settlement Amount is designed to cover anticipated incentive payments of $10,000 to each of the Representative Plaintiffs in this action (Salcido, Alvarez and Barbosa), and the costs of administration of the settlement by the Claims Administrator. *Id.* ¶ 29(a). By a separate application to be filed prior to the final fairness hearing, Class Counsel will seek, and Defendant has agreed not to oppose, an award of attorneys' fees in an amount of up to one-third of the Gross Settlement Fund and $66,900.75 in Class Counsel's costs of suit. *Id.* ¶ 29(b). The balance remaining in the Qualified Settlement Fund after these costs and expenses are deducted shall constitute the Net Settlement Amount from which awards to eligible Settlement Class members (*i.e.*, those who return the Court-approved Claim Form), will be calculated. *Id.* ¶ 28. One hundred thousand dollars ($100,000) from the Gross Settlement Amount will be allocated for payment of any agreed and allowed late

claims or unanticipated expenses.  *Id.* ¶ 29(d).  If this amount is not exhausted by the payment of late claims and related expenses, the unexhausted amount will be donated to designated charitable organizations pursuant to the *cy pres* doctrine.  *Id.* ¶ 29(d).

The Claims Administrator will use personnel and payroll records provided by Defendant to determine the amount that each Settlement Class member is eligible to receive upon submission of a valid and timely Claim Form.   Agreement ¶ 30.  Based on the number of weeks each Settlement Class member actually worked for Defendant during the eligibility period, the Claims Administrator will calculate an award for each individual.  Settlement Class members will be divided into two categories based upon whether they were required to wear mesh protective clothing and equipment as part of their jobs (the "Mesh Group" and the "Non-Mesh Group"). *Id.*   The total number of settlement shares is equal to the sum of the settlement shares for both of the Groups, which will constitute the total settlement shares for the Settlement Class.   Each Settlement Class member's number of settlement shares will be divided by the total settlement shares and that ratio will be multiplied by the Net Settlement Amount to determine the amount of the monetary award that each Settlement Class member will receive.  *Id.*  The parties may seek review of the Claims Administrators' calculations.  *Id.* Fifty percent (50%) of each Settlement Award shall be treated as back wages subject to W-2 reporting and normal payroll taxes and withholding will be deducted by the Claims Administrator pursuant to state and federal law on these amounts.  *Id.*  The remaining fifty percent (50%) of each Settlement Award shall be treated by all parties as non-wage

penalties and liquidated damages, and will be reported on an IRS Form 1099 and shall not be subject to FICA and FUTA withholding taxes. *Id.*

Although the precise amount that will be paid to individual Class Members cannot be determined until the expiration of the claims period, it is estimated that a Class Member who worked throughout the entire Eligibility Period in a position that required the Class Member to wear mesh protective clothing, will receive a Settlement Award of approximately $7,845.00. Likewise, a Class Member who worked throughout the entire Eligibility Period in a position that did not require the Class Member to wear mesh protective equipment would receive a Settlement Award of approximately $2,615.00. The reason for this difference is based on the fact that it purportedly takes mesh-wearing employees more time to don and doff their protective equipment at the beginning and end of the workday, as well as at meal and break times.  To the extent a Class Member worked for less than the entire Eligibility Period, the estimated Settlement Award payments will be proportionately lower.

The Settlement Agreement provides what the parties believe is the fairest and most practicable procedure for notifying the Settlement Class members concerning the terms of  the Settlement and their respective rights under the Settlement.    Agreement ¶ 19. Using computerized address searches based on employment records, calls to the last known telephone numbers of Settlement Class members, and newspaper notification in the *Fresno Bee* and *Vida en el Valle* (the Central Valley's largest Spanish-language newspaper), the Claims Administrator, Class Counsel and Defendant will make all reasonable efforts, as specified in the Settlement Agreement, to best ensure that each

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Settlement Class member receives full and adequate notice of the Settlement, including: the Gross and Net Settlement Amounts, the requirement that a Settlement Class member timely submits a Claim Form to participate in the Settlement, an opportunity to submit objections to the Settlement and appear at the final fairness hearing; and an opportunity to opt out of the California State Claims Class altogether and to opt-in to the FLSA Collective Class. *Id.*

In exchange for the Settlement benefits, Settlement Class members who do not opt-out of the California State Claims Class (and those Settlement Class members who opt-in to the FLSA Collective Class) will release Defendant from all claims asserted in the *Salcido* or *Barbosa* actions.  Agreement ¶ 14.

Any Settlement Class member who wants to be excluded may be excluded from the Settlement by providing timely notice to the Claims Administrator.  *Id.* ¶ 20. Settlement Class members who do not exclude themselves from the Settlement may also object to the fairness, reasonableness or adequacy of the Settlement or any award of fees or expenses.  *Id.* ¶ 21.  The Notice will fully explain the opt-out and objection procedures. *Id.* ¶¶20-21 and Exhibit A.

Because this lawsuit is before the Court under the Class Action Fairness Act, appropriate Federal and State officials must be notified of the Settlement.  28 U.S.C. § 1715.  The Parties have agreed that within five business days of the Court's preliminary approval of the Settlement, the Claims Administrator will cause a notice of the proposed settlement to be served upon the appropriate state official of each state in a class member

JOINT MOTION OF THE PARTIES FOR ORDER
PROVISIONALLY APPROVING CLASS ACTION
SETTLEMENT

resides and the appropriate federal official. *Id.* ¶ 18. The notice to government agencies will include all documents and information required by 28 U.S.C. § 1715.

The proposed Settlement Agreement satisfies all of the criteria for preliminary settlement approval under federal law and falls well within the range of possible approval. Accordingly, the parties respectfully request that the Court grant this motion. The Settlement Agreement provides multiple procedures to ensure Settlement Class Members receive notice of the settlement. Plaintiffs' counsel and Defendant are both of the opinion that the Settlement Agreement is fair, reasonable, adequate, and is in the best interest of the Class in light of all known facts and circumstances, including the significant risks and delays of litigation that are presented by the defenses and potential appellate issues that Defendant may assert. Plaintiffs' counsel has fully advised the Representative Plaintiffs of the Settlement Agreement and represents that they fully approve of and consent to it.

## IV.  **LEGAL ARGUMENT**

### A. **THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE CLASS AND COLLECTIVE ACTION SETTLEMENT AND SCHEDULE A FAIRNESS HEARING**

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise of claims brought on a class basis. Although approval of class settlements lies within the discretion of the Court, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1001, 1027 (9th Cir. 1998), this discretion is constrained by the "principle of preference" favoring and encouraging settlements in appropriate cases. *See, e.g., Pigford v. Glickman*, 185 F.R.D. 82, 103 (D.D.C. 1999). A court's decision to approve a class action settlement may be reversed only upon a strong showing of "clear abuse of

discretion." *Hanlon*, 150 F.3d at 1026; *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

Rule 23(e) sets forth a "two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (*citing Manual for Complex Litig.* 3d, § 30.41). Final approval is warranted where the settlement is "fundamentally fair adequate, and reasonable." *Id.* (quoting 5 *Moore Federal Practice,* sec. 23.85 (Matthew Bender 3d ed.)).

"The preliminary determination establishes an initial presumption of fairness." *In re General Motors Corp.*, 55 F.3d 768, 784 (3d Cir. 1995). Preliminary approval of a settlement and notice to the proposed class is appropriate:

> [i]f the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval . . .

*In re Tableware Antitrust Litig.*, 484 F. Supp.2d 1078, 1079 (N.D. Cal. 2007) (*quoting Schwartz v. Dallas Cowboys Football Club, Ltd.*, 157 F. Supp. 2d 561 n. 12 (E.D. Pa. 2001)); *Manual for Complex Litig.* 3d, § 30.41 (preliminary approval is warranted "if the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval"); *see also Hanlon*, 150 F.3d at 1027 (the court's task is to "balance a number of factors," including "the risk, expense,

1  complexity, and likely duration of further litigation," "the extent of discovery completed

2  and the stage of the proceedings," and "the amount offered in settlement").  The opinion

3  of experienced counsel supporting the settlement is entitled to considerable weight in a

4  court's evaluation of a proposed settlement.  *In re Michael Milken & Assoc. Sec. Litig.*,

5  150 F.R.D. 57, 66 (S.D.N.Y. 1993); *Reed v. General Motors Corp.*, 703 F.2d 170, 175

6  (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's

7  length cannot be gainsaid.  Lawyers know their strengths and they know where the bones

8  are buried.").

9  

10      The Settlement proposed by the parties falls well within the range of possible

11  approval since it meets each of the requirements of substantive and procedural fairness

12  and there are no grounds to doubt the reasonableness of the proposed Settlement.

### 1.    The Proposed Settlement Falls Well Within the Range of Possible Approval

16      First, the proposed Settlement falls within the range of possible approval.  To

17  evaluate this criterion, which focuses on "substantive fairness and adequacy," "courts

18  primarily consider plaintiffs' expected recovery balanced against the value of the

19  settlement offer."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080.

21      Here, the Settlement should be approved because it confers a substantial benefit on

22  the Settlement Class Members, whereas proceeding with litigation would impose

23  significant risk of no recovery as well as ongoing, substantial expense.  Schneider Decl. ¶

24  8.  Plaintiffs in the proposed Settlement Class will share in a $7.5 million Gross

25  Settlement Fund (less the costs of administration and Class Counsel fees and costs),

26  which will provide each Class Member with substantial monetary relief.

Prior to the mediation, Defendant responded to Plaintiffs' extensive written discovery regarding both the merits of Plaintiffs' claims and the appropriateness of these lawsuits for class certification. Schneider Decl. ¶¶ 4-5. Plaintiffs' counsel then reviewed thousands of pages of documents and other human resource data produced by Defendant relating to its pay policies and time-keeping-related records applicable to the claims alleged in the Complaints. *Id.* Plaintiffs' counsel also analyzed Defendant's time and pay records for all members of the Settlement Classes to estimate the amount of lost wages and other damages implicated by Plaintiffs' claims. *Id.* Plaintiffs' counsel additionally conducted a thorough investigation into the facts by diligently pursuing and conducting, with the help of translators where necessary, dozens of extensive and detailed in-person interviews of Class Members and analyzing the information they provided. *Id.* ¶ 5.

Defendant contests its liability in this action and is prepared to vigorously defend itself. Schneider Decl. ¶ 8. Plaintiffs' claims, if the action cannot be settled, including the maintenance of this action as a class action, are subject to serious manageability issues stemming from individual considerations that would arise at trial. Although Plaintiffs believe their claims have a great deal of merit, parties in the litigation process always face significant risk of an adverse result, or a partially adverse result and would be required to expend additional time and resources litigating the case. *Id.* The Settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable and adequate and is in the best interests of the Settlement Class in light of all known facts and circumstances, including the risk of significant delay, the risk the

Settlement Class would not be certified by the Court, and the defenses asserted by Defendant.

Continued litigation of Plaintiffs' and the Class' claims in this action would require substantial additional preparation and discovery.  Schneider Decl. ¶ 8.  It ultimately would involve the deposition and presentation of numerous witnesses; the consideration, preparation and presentation of documentary evidence; and the preparation and analysis of expert reports.  *Id.*  In addition, Defendant would oppose class certification.  *Id.*  If this case were to go to trial, it is estimated that fees and costs would easily exceed $3 million per side.  *Id.*

By contrast, the Settlement Agreement will yield a prompt, certain, and very substantial recovery for the Class.  Such a result will benefit the parties and the court system.  In exchange for the Settlement benefits, the Class Members will be required to execute a release that is appropriately tailored only to those claims that have been alleged based on the facts alleged in the Complaints on file in these actions.  Agreement ¶ 2(d), (r) and (s).

For these reasons, Plaintiffs believe this is an excellent Settlement for Plaintiffs and the Classes.

### 2. The Proposed Settlement was the Product of Informed, Non-Collusive Negotiations and Does Not Present Any Grounds to Doubt its Fairness

Plaintiffs faced several hurdles in the prosecution of this case, including language barriers (most of the Settlement Class Members speak only Spanish) and a mobile class of employees.  Schneider Decl. ¶ 5.  Settlement in this matter was reached only after informed arms'-length negotiations between the parties.  *Id.*  Both parties conducted

extensive investigation allowing them to assess the strengths and weaknesses of the case. *Id.* ¶¶ 4-5. A formal mediation before a skilled and experienced mediator was required, and the parties also engaged in additional in-depth negotiations in the weeks following two full-day mediation sessions concerning the detailed terms of the proposed settlement. *Id.* ¶6. Thus, the Settlement is the product of non-collusive negotiations.

Next, the proposed Settlement should be preliminarily approved because it has no "obvious deficiencies," such as "unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *In re Vitamins Antitrust Litig.*, 2001 WL 856292 at *4 (D.D.C. July 25, 2001). The Settlement Agreement provides that Class Counsel will pay reasonable enhancements to Class Representatives as compensation for their extensive services as Class Representatives and substantial assistance to Class Counsel in prosecuting this action on behalf of other, absent class members. Schneider Decl. ¶ 10. The enhancements are reasonable and should be granted. *See, e.g., Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294 (N.D. Cal. 1995).

Service or incentive payments to named plaintiffs are frequently awarded to recognize their time and efforts, and the risks they undertake on behalf of a class. Courts routinely award service payments, which are intended to advance public policy by encouraging individuals to come forward and perform their civic duty in protecting the rights of the class, as well as to compensate class representatives for their time, effort and inconvenience. *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001), *quoting In Re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio

1997) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").  In the *Ingram* case, the Court approved incentive awards of $300,000 to each named plaintiff in recognition of the services they provided to the class by responding to discovery, participating in the mediation process and taking the risk of stepping forward on behalf of the class.  *Id* at 694; *see also Van Vranken*, 901 F. Supp. at 300 (N.D. Cal. 1995) (approving $50,000 participation award for the representative Plaintiff).

In this action, the Representative Plaintiffs took very real steps to advance the interests of the Settlement Class in this litigation.  Schneider Decl. ¶ 10.  They brought the claim to the attention of Class Counsel.  *Id.*  They searched their files and produced all of the documents they had relating to their employment by Defendant.  *Id.*  They explained the employment practices that they encountered.  *Id.*  They gave extensive multiple interviews concerning their experiences.  *Id.*  Moreover, they took the extraordinary step of putting themselves on the line by agreeing to serve as Class Representatives, with all of the attendant duties, and by agreeing to put the interests of the Classes ahead of their own.  *Id.*  As a result of their efforts, the Settlement Class members will benefit from substantial financial recoveries.  The proposed service payments of $10,000 to each of the three Class Representatives is reasonable in light of the efforts they made and risks they took in bringing and prosecuting this action to obtain the Gross Settlement Amount.

The Agreement's provisions concerning attorneys' fees are likewise fair and reasonable. Class Counsel does not seek, with this Motion, approval of an attorneys' fee award. Rather, Class Counsel will make an appropriate motion, pursuant to Fed. R. Civ. P. 23(h), requesting an award of attorneys' fees not to exceed one-third of the Gross Settlement Amount. Such an award is well within the range of the Ninth Circuit's 25% "benchmark for calculating common fund attorneys' fees." *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Pacific Enterprises Security Litigation*, 47 F.3d 373, 379 (9th Cir. 1995); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1375 (N.D. Cal. 1989).

Class Counsel's extensive efforts on behalf of the Class Members to date, as well as the substantial time Class Counsel expects to devote to the implementation and administration of the Settlement Agreement, should be recognized at the appropriate time, with the appropriate procedure. Class Counsel believe that they have obtained an extraordinarily successful result for the Settlement Classes in this case. A standard one-third fee is the norm in contingency-fee cases. *See Vizcaino*, 290 F.3d at 1051.

### 3. The Proposed Notices to Settlement Class Members and Method of Notification are Adequate

"Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon,* 150 F.3d at 1025. A class action settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village*

*LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (quoting *Mendoza v. U.S.*, 623 F.2d 1338, 1352 (9th Cir. 1980)).

Here, the Notice and manner of distribution negotiated and agreed upon by the parties is "the best notice practicable," as required under Federal Rule of Civil Procedure 23(c)(2)(B). All Settlement Class Members have been identified and the Notice will be mailed directly to each Class Member. *See* Agreement ¶ 19. The proposed Notice (*see* Exhibit A to the Settlement Agreement) is clear and straightforward, will be disseminated in both English and Spanish, and provides information on the meaning and nature of the proposed Settlement Classes and class action, the terms and provisions of the Settlement Agreement, and the monetary awards that the Settlement will provide Class members.

The proposed Class Notice also fulfills the requirement of neutrality in class notices. *See* 4 NEWBERG § 8.39. It summarizes the proceedings necessary to provide context for the Settlement Agreement and summarizes the terms and conditions of the Settlement, including an explanation of how the Settlement amount will be allocated between the named Plaintiffs, Class Counsel, the Settlement Administrator, and the Settlement Class members, in an informative, coherent and easy-to-understand manner, all in compliance with the Manual for Complex Litigation's observation that "the notice contain a clear, accurate description of the terms of the settlement." MANUAL, at § 21.312.

The Notice clearly explains the procedures and deadlines for making a claim for a settlement award, opting out of the settlement or submitting objections, the consequences of taking or foregoing the various options available to Class members, and the date, time

and place of the final settlement approval hearing.  Pursuant to Federal Rule of Civil Procedure 23(h), the proposed Class Notice also sets forth the amount of attorneys' fees and costs sought by Plaintiffs, as well as an explanation of the procedure by which Plaintiffs' counsel will apply for them.  In addition, the Notice explains that Class members have the opportunity to object to, and request a copy from Plaintiffs' counsel of, the Motion for Attorneys Fees and Costs.  The Class Notice clearly states that the Settlement does not constitute an admission of liability by Defendant.  It makes clear that the final settlement approval decision has yet to be made.

Accordingly, the Class Notice complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court.  4 NEWBERG, §§ 8.21 and 8.39; MANUAL, § 21.311 and 21.312.

The Notice will be mailed by the Class Administrator within twenty-five (25) days following this Court's grant of preliminary approval of the proposed Settlement Agreement, and the Settlement Class Members will be provided a period of one-hundred eighty (180) days to participate in the Settlement by signing and returning their Claim Forms.  Moreover, the Claims Administrator will send a reminder notice thirty (30) days after the initial notice is mailed.

Reasonable steps will be taken to ensure that all Class Members receive the Notice. Before mailing the Class Notice and Claim Form the Claims Administrator will: (1) receive the last-known addresses, telephone numbers, and social security numbers of the Settlement Class Members; (2) run this class list through the United States Postal Service's National Change of Address database ("NCOA").  The NCOA database

documents change-of-address requests filed with the post office and can cover up to a four-year period; (3) perform address searches using public and proprietary electronic resources which collect their data from various sources such as utility records, property tax records, motor vehicle registration records (where allowed) and credit bureaus; and (4) call last-known telephone numbers (and telephone numbers updated through public and proprietary databases) to contact Settlement Class Members to obtain their current addresses.  Agreement ¶ 19.  These processes will be repeated for those Settlement Class Members for whom the Class Notice is returned as undelivered.  *Id*.  Finally, the Settlement Agreement further provides that the Class Notice will be published in the *Fresno Bee* and *Vida en Valle* (the Central Valley's largest Spanish language newspaper).  *Id.*

## B. PROVISIONAL CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Pursuant to Federal Rule of Civil Procedure 23(c)(1), the Court may "make a conditional determination of whether an action should be maintained as a class action, subject to final approval at later date."  *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 466 (E.D. Pa. 2000) (*citing* Fed. R. Civ. P. 23(c)(1)).  Conditional approval of the class is appropriate where the plaintiff demonstrates numerosity, commonality, typicality and adequacy of representation, and one of the three requirements of Fed. R. Civ. P. 23(b) is met.  *See, e.g.*, *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  Plaintiffs submit that all of the requirements of Rule 23(a) as well as those of Rule 23(b)(3) are met in this case for purposes of settlement.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

21

## C. CLASS CERTIFICATION IS PROPER UNDER RULE 23(A).

### 1. *Numerosity*

To meet the numerosity requirement of Rule 23(a)(1), "the class size only need be large enough that it makes joinder impracticable." *Fry*, 198 F.R.D. at 467. The proposed Settlement Class here easily meets the numerosity requirement because 5,467 Settlement Class members have been identified through Defendant's payroll records.

### 2. *Commonality*

The commonality requirement of Rule 23(a)(2) "is met if there is 'at least one common question or law or fact." *Fry*, 198 F.R.D. at 467. As the Ninth Circuit recently held in *Dukes v. Wal-Mart Stores, Inc.*, 474 F.3d 1011 (9th Cir. 2007) (*internal citations omitted.*):

> We noted in *Hanlon v. Chrysler Corp.*, 474 F.3d 1214, 1225 (9th Cir. 2007) 'Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.' The commonality test is 'qualitative rather than quantitative, one significant issue common to the class may be sufficient to warrant certification. . . . As the district court in *Dukes* properly noted, 'plaintiffs may demonstrate commonality by showing that class members have shared legal issues by divergent facts or that they share a common core of facts but base their claims for relief on different legal theories.'

According to Plaintiffs, common questions of law and fact predominate. The alleged common issues, which predominate in this action, include, for example: (1) whether the Settlement Class Members during the Class Period were similarly denied compensation for all hours worked, including hours spent donning and doffing protective gear and equipment; (2) whether Settlement Class Members were entitled to overtime

compensation for their overtime hours worked, including for time spent donning and doffing protective gear and equipment; and (3) whether Defendant denied the Settlement Class Members their meal and rest breaks required under California state law.  These sample common questions of law and fact, which Plaintiffs contend apply uniformly to all of the members of the proposed Settlement Class, predominate over any individual questions of individual liability.

> 3.  *Typicality*

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class."  *Fry*, 198 F.R.D. at 468.  "Under the rule's permissive standards, a representatives' claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical."  *Hanlon*, 150 F.3d at 1020; *Dukes*, 474 F.3d at 1232.  To satisfy the requirement of typicality, "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 156 (1982).

Plaintiffs contend that their claims are sufficiently typical of the common claims presented.  Plaintiffs were hourly production and support employees of Defendant in its Fresno, California meat processing facility who were allegedly: 1) not paid their wages for all hours worked; 2) denied overtime wages; and 3) denied meal and rest periods during their employment.  As set forth above, Plaintiffs contend that Defendant's uniform treatment of the proposed Settlement Class Members with respect to these issues demonstrate that the proposed Settlement Class Members possess similar interests and

suffered similar injuries. According to Plaintiffs, a class action adjudicating all of these claims is clearly superior to individual adjudication of each Class Member's claims, which would require numerous separate trials and could lead to contradictory results.

For purposes of preliminary approval of the parties' settlement, because the claims of the named Plaintiffs and Settlement Class all arise from the same alleged practices, policies, events and courses of conduct, and are all based on the same facts and legal theories, the typicality requirement is also satisfied.

       4.  *Adequacy of Representation.*

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469; *see also Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

According to Plaintiffs, the adequacy of representation requirement is met here because the named Plaintiffs have the same interests as the Settlement Class Members and Plaintiffs are represented by experienced and competent counsel. *See* Schneider Declaration. There is no conflict between Plaintiffs and the Settlement Class in this case; Plaintiffs' claims are in line with the claims of the class. Plaintiffs have and will continue to aggressively and competently assert the interests of the Settlement Class/FLSA Class, and Plaintiffs' counsel is skilled and experienced in wage and hour

class action litigation.  Plaintiffs submit that class treatment of these claims is appropriate where, as here, the legality of a policy or practice as a whole is at issue.

### D. CLASS CERTIFICATION IS PROPER UNDER RULE 23(B)(3).

In addition to demonstrating the four prerequisites of Rule 23(a), class certification requires a showing that certification is proper under one of the three requirements of Rule 23(b).  Under Rule 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

For the reasons discussed, Plaintiffs submit that the Settlement Classes defined above satisfy the predominance requirement.  Moreover, Plaintiffs contend that allowing Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is highly superior to having a multiplicity of individual and duplicative proceedings in this Court and others across the state.  It also is superior to the alternative of leaving these important labor rights unredressed due to the difficulty of finding legal representation and filing claims on an individualized basis.

### V.    THE PROPOSED SCHEDULING ORDER

The following schedule sets forth the Parties' proposed sequence for the relevant dates and deadlines (*see also* [proposed] Order), assuming the Court preliminarily approves the Settlement.

| CAFA Notice Sent by Claims Administrator | 5 business days after preliminary approval |
|---|---|

| Defendant Provides Class List to the Claims Administrator: | 10 business days after preliminary approval |
| --- | --- |
| Deposit of Settlement Funds by Defendant with the Claims Administrator, who will deposit the funds into Qualified Settlement Fund: | 20 days after preliminary approval |
| Class Notice and Claim Form Mailed to Class Members: | 25 days after preliminary approval (with reminder postcard mailed 30 days after initial mailing of Class Notice and Claim Form) |
| Attorneys' Fees Motion Filed: | 60 days after preliminary approval |
| Last Day to File Objections and Opt-Out Notices: | 60 days after mailing of Class Notice and Claim Form |
| Last Day to Submit Claim or Opt-In Form for FLSA action: | 180 days after preliminary approval |
| Last Day to File Motion for Final Approval of Settlement: | 81 days after initial mailing of Class Notice and Claim Form |
| Last Day to File Response to Objections (if any): | 81 days after initial mailing of Class Notice and Claim Form |
| Fairness Hearing and Fee Approval Hearing: | 96 days after preliminary approval |
| Payment of Attorneys' Fees: | 30 days after Final Approval (or 3 days if there are no objections) |
| Deadline for Payments of Claims to Class Members and Named Plaintiffs: | 30 days after Final Approval |
| Report on Settlement Administration to Court by Class Counsel (including affidavit by the Claims Administrator): | 180 days after initial mailing of Class Notice and Claim Form |

## VI.   <u>CONCLUSION</u>

For the foregoing reasons, the parties respectfully request that this Court grant this joint and agreed Motion in its entirety and enter the accompanying proposed Order.

1      Respectfully submitted,

2

3

4  DATED:  Jan. 27, 2009      TODD M. SCHNEIDER
                         CAROLYN H. COTTRELL
5                      W.H. "HANK" WILLSON, IV
                      SCHNEIDER WALLACE
                      COTTRELL BRAYTON KONECKY LLP

6

7                      SHANON J. CARSON
                      BERGER & MONTAGUE, P.C.

8                      PHILIP A. DOWNEY, ESQ.

9

10                   By: */s/ Hank Willson*
                              Hank Willson

11                   Attorneys for Plaintiffs
                      SANTOS SALCIDO and GUADALUPE ALVAREZ
12                      AND CHRISTINA BARBOSA AND THE
                      PUTATIVE CLASS

13

14  DATED:  _Jan. 27, 2009___      JOSEPH E. TILSON
                      JEREMY J. GLENN
15                      MECKLER BULGER TILSON MARICK & PEARSON
                      LLP

16

17                   RONALD H. BARSAMIAN
                      BARSAMIAN & MOODY

18

19                   By: */s/ Joseph E. Tilson*
                                Joseph E. Tilson

20                   Attorneys for Defendants
                      CARGILL MEAT SOLUTIONS CORP., CARGILL
21                      MEAT SOLUTIONS CORP. d/b/a BEEF PACKERS,
                      INC., and BEEF PACKERS, INC.

22

23

24

25

26

27

28